■ COZZOLINO CONSTRUCTION CORPORATION, Respondent, v. HEALTH AND MENTAL HYGIENE FACILITIES IMPROVEMENT CORPORATION, Appellant, and LABORERS LOCAL UNION NO. 157 OF SCHENECTADY, NEW YORK, OF THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA, Respondent.— Appeal (1) from an order of the Supreme Court at Special Term, entered August 8, 1972 in Albany County, which granted a motion by plaintiff for summary judgment, and (2) from the judgment entered thereon. On June 4, 1969, plaintiff Cozzolino Construction Corporation was awarded a contract to construct a new Wilton State School for the Health and Mental Hygiene Facilities Improvement Corporation (hereinafter referred to as the "State"), a public benefit corporation created by section 1 of chapter 359 of the Laws of 1968. At the time the contract was awarded, plaintiff was obligated to pay its union laborers travel expenses pursuant to a collective bargaining agreement with defendant Laborers Local Union No. 157 of Schenectady, New York, of the Laborers International Union of North America (hereinafter referred to as the "Union"), which, for the project in question, amounted to $1.50 per day per man. On May 1, 1970 the Union negotiated a new collective bargaining agreement with the employer's organization representing plaintiff which, among other things, changed the travel expense clause to increase the reimbursement rate with a provision that the old rate would apply to all work bid before May 1, 1970 (if applied to the Wilton project the new rate would be $5.20 per day per man). In February, 1971 the construction work on the Wilton School ceased due to disputed causes and thereafter negotiations ensued between the State and the plaintiff which, on October 28, 1971, resulted in substantial modification of the original contract. In particular, the lump sum method of payment was replaced by a cost plus a fixed fee basis, and the original bid price of $7,879,750 was changed to a target cost of $10,367,000. The ultimate obligation of travel reimbursement passed to the State but no specific reference was made in the modification agreement as to which rate would apply. The State resisted the efforts of the Union to collect the new rate which position became the subject of a declaratory judgment action. While the parties to the contract affirmatively ratified the remaining terms of the original contract, through the substantial changes, which again

required approval of the Attorney-General and the Comptroller (Health and Mental Hygiene Facilities Improvement Act, § 9, subd. 2, par. [g], cl. [iv] [L. 1968, ch. 359, § 1]), they produced a new contract (10 N. Y. Jur., Contracts, § 406) and when the work commenced in November, 1971, the new travel reimbursement rate became applicable in view of the fact it was not work being performed pursuant to the bid submitted in 1969. Judgment and order affirmed, without costs. Staley, Jr., Sweeney and Kane, JJ., concur; Herlihy, P. J., and Greenblott, J., dissent and vote to reverse in a memorandum by Greenblott, J. Greenblott, J. (dissenting). We dissent and vote to reverse. In our opinion, Special Term erred in holding that the modification agreement created a new contract. This agreement did not have an existence independent of the original construction contract which continued to form the basis of the legal relationship already established between the parties. Its title, "Modification of Contract", indicates that its purpose was not to terminate the original contract but merely to modify it as to compensation and time of completion. Otherwise the work performed was in accordance with the original contract. We, therefore, agree with appellant's contentions that the modification agreement cannot stand alone and is obviously incomplete without the original contract. The crux of the dispute between the parties is the interpretation to be given the "grandfather" clause in the collective bargaining agreement which provides that "on work bid before May 1, 1970" transportation reimbursement shall be at the former low rate. The law requires that public letting by competitive bidding after advertising must be undertaken for a project of this size. Under such a modification as here, the relationship between the parties continues and the contractor does not lose his status as the lowest responsible bidder. There was no additional public letting at the time of the execution of the modification agreement. Appellant would not have been empowered under the statute to enter into a new agreement with a third party for this modification without public bidding. Moreover, respondent continued to pay members of the union at the old rate of $1.50 per day per man not only after the new labor agreement came into effect on May 1, 1970, but even after the modification agreement was entered into on October 28, 1971. It is thus apparent that the parties understood that the former rate was in effect for work performed under the modification agreement. In construing the term "work bid before May 1, 1970", the only reasonable application of that term is to construction jobs which commenced before that date, regardless of whether such projects are completed pursuant to renegotiated contracts. The order and judgment of Special Term should be reversed.